USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/14/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                     :

1199SEIU UNITED HEALTHCARE WORKERS
EAST,                                     :      13 Civ. 2608 (JGK) (DF)
                 Plaintiff,

                                     :      **REPORT AND**
      -against-                           :      **RECOMMENDATION**

SOUTH BRONX MENTAL HEALTH COUNCIL   :
INC.,
                 Defendant.             :

------------------------------------------------------------X

**TO THE HONORABLE JOHN G. KOELTL, U.S.D.J.:**

        Pursuant to Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"),

29 U.S.C. § 185(a), and Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9,

petitioner 1199SEIU United Healthcare Workers East ("Petitioner" or "1199") has petitioned this

Court to confirm an arbitration award issued against South Bronx Mental Health Council, Inc.

("Respondent" or "SBMH"). Respondent has not answered or otherwise appeared in this

proceeding, and this matter has been referred to me for the purpose of conducting a damages

inquest, following entry by the Court of a default judgment against Respondent. (*See* Dkts. 18,

19.)

        For the sake of clarity and in accordance with the law discussed further below,

I recommend that Petitioner's unanswered motion to confirm the arbitration award (Dkt. 9) be

treated as an unopposed motion for summary judgment, and that judgment be entered against

Respondent in the amount of $1,465,315.34, with pre-judgment interest of nine percent, to be

calculated by the Clerk of the Court from the date of the arbitration award to the date of

judgment. I further recommend that Petitioner's application for $495.00 in litigation costs

1

incurred in the prosecution of this action be granted, but that Petitioner's application for

attorneys' fees be denied without prejudice to renew, upon a showing that the fees sought were

actually incurred in connection with this litigation.

## BACKGROUND

### A.    Factual Background

As set out in the Petition, together with Petitioner's Proposed Findings of Fact and

Conclusions of Law and supporting Affidavit,[1] the events that gave rise to this action may be

summarized as follows:

Petitioner is a labor organization within the meaning of Section 2(5) of the National

Labor Relations Act ("NLRA"), 29 U.S.C. § 152(5), and is the sole and exclusive bargaining

representative of all of Respondent's employees, excluding supervisory, confidential, executive

and managerial employees (the "Employees").  (Pet. ¶¶ 2, 9.)  Respondent is a New-York-based,

not-for-profit corporation and employer within the meaning of Section 2(2) of the NLRA, 29

U.S.C. § 152(2), and is a member of the League of Voluntary Hospitals and Homes of New York

(the "LVH"), which acts as the agent of its member institutions in collective bargaining with

Petitioner.  (Pet. ¶¶ 3, 6; Proposed Findings ¶ 3.)

Petitioner and LVH are parties to a collective bargaining agreement ("CBA"), which was

extended by a memorandum of agreement ("MOA") effective June 1, 2009 through April 30,

2015.  (*See* Pet. ¶ 7 & Exs. A (Collective Bargaining Agreement between 1199 and LVH, dated

---

[1] *See* Verified Petition to Confirm an Arbitrator's Award, dated Apr. 19, 2013 ("Pet.")
(Dkt. 1); Petitioner 1199SEIU United Healthcare Workers East's Memorandum of Law in
Support of its Application to Confirm Arbitrator's Award, dated Apr. 19, 2013 (Dkt. 3);
Statement of Damages, dated May 20, 2013 (Dkt. 10); Proposed Findings of Facts and
Conclusions of Law, dated Oct. 17, 2013 ("Proposed Findings") (Dkt. 23); Affidavit of Susan J.
Cameron, sworn to May 20, 2013 ("Cameron Aff.") (Dkt. 12).

2

July 1, 2007 through Sept. 30, 2011), B (1199/LVH Memorandum of Agreement, dated July 19,

2009).)  In February 2013, Petitioner and LVH entered into an agreement modifying the MOA

(the "Pension Lump Sum Agreement").  (*Id.* ¶ 7 & Ex. C (Pension Lump Sum Agreement, dated

Feb. 2013).)  As a member of LVH, Respondent is bound by the terms of the CBA, MOA, and

the Pension Lump Sum Agreement.  (*Id.* ¶ 8.)

1. <strong><u>The Collective Bargaining Agreement</u></strong>

The CBA sets out, *inter alia*, specific guidelines for calculating Employees' vacations,

holidays, and rights in the event of a demotion or layoff.  With respect to vacations, Article XVI

of the CBA provides that:

> 1. Employees shall be entitled to accrued vacations each year
> with pay as follows:
>
> (a) For Employees in technical and professional job
> classifications, except MSW Social Workers:

| Period of Continuous Employment | Amount of Paid Vacation |
|---|---|
| Less than 6 months | None |
| 6 months but less than 1 year | 2 weeks |
| 1 year or more | 4 weeks |

. . .

> (d) For all other Employees:

| Period of Continuous Employment | Amount of Paid Vacation |
|---|---|
| Less than 6 months | None |
| 6 months but less than 1 year | 1 week |
| 1 year but less than 5 years | 2 weeks |
| 5 years or more | 4 weeks |

(*Id.* ¶ 11 & Ex. A, at 68.)

Article XV of the CBA, entitled "Holidays," provides that "[e]mployees shall be entitled to a total of twelve (12) paid holidays within each year," subject to certain restrictions, including that "[i]f a holiday falls within an Employee's first thirty (30) days of employment, then such Employer shall receive pay for the holiday only upon completion of twelve (12) months of employment." (*See id.* ¶ 12 & Ex. A, at 66.)

Employees' entitlement to severance pay is outlined in Article XXI of the CBA, which states that:

> Employees with one (1) or more years of bargaining unit seniority, who are permanently laid off, or who are temporarily laid off in excess of seven (7) days, shall receive severance pay at the rate of one (1) weeks pay for each year of their bargaining unit seniority, pro-rated, up to a maximum of four (4) weeks pay, at his/her regular pay in effect at the time of such layoff, provided that the amount of severance pay shall not exceed the regular pay the Employee would have earned during the period of the layoff.

(*Id.* ¶ 13 & Ex. A, at 75.) In addition, Article IXA(B)(5)(a) of the CBA instructs that "[i]nstitutions which, for economic or other reasons must retrench Employees in any title represented by the Union agree to provide thirty (30) days notice." (*Id.* ¶ 14 & Ex. A, at 30.)

Under the CBA, the parties agreed to submit to arbitration any dispute relating to the CBA that was unresolved after 30 days. (*Id.* Ex. A, at Arts. XXXI, XXXII.)

## 2. The Memorandum of Agreement and Pension Lump Sum Agreement

The MOA and Pension Lump Sum Agreement between Petitioner and LVH outline certain amendments to the CBA. As relevant here, pursuant to Article 3(D)(1), the MOA provides that:

> Effective with the first payroll period following August 1, 2012, each fulltime Employee on the payroll, on that date and who was employed ninety (90) days prior to that date; shall receive a lump

4

sum payment equal to two and one half percent (2.51%) of his/her base weekly rate in effect on the day prior to the effective date. The payment shall be prorated for part-time Employees based on the average hours actually worked during the foregoing ninety (90) day period (or the ninety (90) day period referred to in paragraph 3.D.3 below, where applicable).

(*Id.* ¶ 15 & Ex. B, at 2.)  Similarly, the Pension Lump Sum Agreement provides that

Effective with the first payroll following April 1, 2013, the Employer shall make a lump sum payment to each employee which is equal to 1.77% of the gross wages that it reported to the NPF for each employee for the four monthly contributions beginning with the December, 2012 contribution (based on November, 2012 wages) through the March, 2013 contribution (based on February, 2013 wages).

(*Id.* ¶ 16 & Ex. C, at 1 (emphasis omitted).)

### 3.     Petitioner's Demand for Arbitration

On March 21, 2013, Petitioner wrote a letter to George Nicolau ("Nicolau" or the "Arbitrator"), who was the Contract Interpretation and Policy Committee ("CIPC") arbitrator designated under the CBA, stating that a dispute had arisen between Petitioner and Respondent that the parties had been unable to resolve, and that the parties were submitting the matter to arbitration.  (*See id.* ¶ 17; *see also id.* Ex. A, at Art. XXXIB; *id.* Ex. D (Demand for Arbitration ("Demand"), dated Mar. 21, 2013).)  The Demand, which was served on Respondent's representatives, stated that the dispute between the parties related to Respondent's failure to apply terms, conditions, and stipulations relating to "vacation and other paid time off accrual rates, paid release time for professional conferences, notice of layoffs, layoffs, severance payments, and payment of promotional increases."  (*Id.* Ex. D.)

### 4.   **The Arbitral Proceeding and Award**

The CIPC scheduled the arbitration hearing for April 5, 2013 and notified both Petitioner

and Respondent of that date.  (*Id.* Ex. F (Opinion and Award, dated Apr. 6, 2013), at 2.)

Attorneys for Petitioner attended the hearing, but no representatives or attorneys appeared on

behalf of Respondent.[2]  (*Id*. Ex. F, at 2.)  As Respondent had been given full notice of the

proceeding and chose not to appear, the Arbitrator elected to "receive the evidence proffered by

the Union and make a determination on the proof presented."  (*Id.*)

At the arbitration, Petitioner presented a number of exhibits that the Arbitrator received

into evidence, including the CBA, the MOA, the Pension Lump Sum Agreement, and

spreadsheets detailing unpaid amounts that Respondent allegedly owed to the Employees.  (*Id.*

Ex. F, at 2-3 (describing Union Exs. A-L).)  Specifically, Petitioner contended that Respondent

owed the Employees:

- Unpaid accrued vacation pay, due under the CBA, in the amount of $570,036.50 (*see id.* ¶ 22 & Ex. H (Unpaid accrued vacation pay));

- Unpaid accrued holiday pay, due under the CBA, in the amount of $130,321.82 (*see id.* ¶ 23 & Ex. I (All unpaid accrued holiday pay));

- Unpaid severance pay for Employees who were laid off prior to Respondent's closure, due under the CBA, in the amount of $83,013.89 (*see id.* ¶ 24 & Ex. J (Severance due for layoffs prior to closure));

- Unpaid severance pay for Employees who were laid off upon Respondent's closure, due under the CBA, in the amount of $225,723.11 (*see id.* ¶ 25 & Ex. K (Severance due for employees laid off upon closure));

---

[2] On or about March 31, 2013, Respondent apparently ceased operations.  (*Id.* Ex. D ¶ 10.)

- Unpaid penalty payments for Respondent's failure to provide 30 days' notice of lay off pursuant to the CBA, in the amount of $322,942.92 (*see id.* ¶ 26 & Ex. L (Payment in lieu of proper notice of layoff));

- Unpaid August 2012 bonuses, due pursuant to Article 3(D) of the MOA, in the amount of $105,912.38 (*see id.* ¶ 27 & Ex. M (Aug. 1, 2012 bonus due)); and

- Unpaid April 2013 bonuses, which accrued as of March 31, 2013 pursuant to the Pension Lump Sum Agreement, in the amount of $27,364.73 (*see id.* ¶ 28 & Ex. N (Apr. 1, 2013 bonus)).

In his decision, the Arbitrator explained that Petitioner had affirmed that the amounts owed each Employee, the dates and notice of layoff of Employees, and other relevant data, as set forth in Petitioner's exhibits (*see id.* Exs. H-N), were based "solely on the payroll data provided by the [Respondent], as the Employer of the bargaining unit Employees to either the National Benefit and Pension Fund [or] the Job Security Fund," which were two funds created by the CBA (*id.* Ex. F, at 3). "Based on the thoroughness of [Petitioner's] detailed presentation and the affirmation of counsel as to the foundation of the data," the Arbitrator concluded that Respondent was in violation of the CBA, MOA, and Pension Lump Sum Agreement "by not paying the amounts claimed" in each of the Union's exhibits. (*Id.*) The Arbitrator awarded Petitioner each of the requested amounts, for a total award of $1,465,315.34. (*Id.* (the "Nicolau Award").)

## 5.  Respondent's Noncompliance with the Nicolau Award

On April 6, 2013, the Arbitrator mailed notice of the decision and award to LVH; counsel for Petitioner; John Langrod, Ph.D. ("Langrod"), Chair of the Board of Directors for Respondent; and Scott M. Wich, Esq. ("Wich"), then-counsel for Respondent.  (*See id.* Ex. G (Letter to LVH, SBMH, and attorneys for 1199 and SBMH, from George Nicolau, dated Apr. 6,

7

2013).)  On April 10 and 12, 2013, counsel for Petitioner sent a copy of the Opinion and Award to Respondent and requested a meeting "to discuss the [Respondent's] compliance with the Nicolau Award."  (*See id.* ¶ 29 & Exs. O (Letter to Langrod and Wich, from Susan J. Cameron, Esq., dated Apr. 10, 2013), P (Email to Wich from Cameron, dated Apr. 12, 2013).)

As of October 17, 2013, neither Respondent nor its counsel had responded to Petitioner's communications, and Respondent had failed to comply with the Nicolau Award.  (*See* Proposed Findings ¶ 19.)

### B.     Procedural History

On April 19, 2013, Petitioner filed its Petition in this Court seeking confirmation of the Nicolau Award.  (*See generally* Pet.)  The Petition was served on Respondent on April 24, 2013. (Dkt. 4.)  Respondent failed to answer the Petition or enter a formal appearance before this Court.

On May 14, 2013, the Clerk of Court issued a Certificate of Default as to Respondent, and on May 21, 2013, Petitioner filed a Motion for Default Judgment and served a copy on Respondent.  (*See* Dkts. 7, 9, 15.)  On May 29, 2013, the Honorable John G. Koeltl issued an Order setting out a briefing schedule and hearing date for Petitioner's motion.  (Dkt. 14; *see also* Dkt 16 (Affidavit of service of Judge Koeltl's May 29 Order on Respondent).)  On June 19, 2013, after Respondent failed to respond to Petitioner's motion or appear at the hearing scheduled for that motion, Judge Koeltl issued an Order finding that Petitioner was entitled to a default judgment, and referring the case to me for an inquest on damages.  (Dkt. 19.)

In accordance with this Court's September 17, 2013 Scheduling Order (Dkt. 21), Petitioner filed its Proposed Findings of Fact and Conclusions of Law in connection with the inquest on October 17, 2013 (Dkt. 21).  To date, Respondent has not filed a response.

**DISCUSSION**

**I.**      **CONFIRMATION OF THE ARBITRATION AWARD**

Through its various submissions to the Court, Petitioner effectively seeks judgment in the amount of the Nicolau Award plus pre-judgment interest, and, for the reasons that follow, I recommend that judgment in that amount be granted.

**A.**      **Applicable Legal Standards**

**1.**      **Appropriate Treatment of an Unanswered Petition To Confirm an Arbitration Award**

Although Petitioner in this case moved for a default judgment when Respondent failed to answer the Petition to confirm the arbitration award, and the Court then granted that motion, the most appropriate way for this Court to determine the amount of any judgment that should be entered in Petitioner's favor is to "treat [the] unanswered petition . . . as an unopposed motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 1006); *see also, e.g.*, *Trs. of the Unite Here Nat'l Health Fund v. JY Apparels, Inc.*, 535 F. Supp. 2d 426, 428 (S.D.N.Y. 2008).

Under the relevant precedent, while a party's "failure to contest issues not resolved by the record will weigh against it," *D.H. Blair & Co.*, 462 F.3d at 109, a court may not simply confirm an arbitration award because the motion to confirm is unopposed.  Rather, as on any summary judgment motion, the Court must "'first examin[e] the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'"  *N.Y.C. Dist. Council of Carpenters Pension Fund v. Unique Installers, Inc.*, No. 07 Civ. 6931 (DLC), 2007 WL 4115954, at *2 (S.D.N.Y. Nov. 19, 2007) (quoting *D.H. Blair & Co.*, 462 F.3d at 109-10)); *see also* Fed. R. Civ. P. 56; *Vt. Teddy Bear Co., Inc. v. 1-800-BEARGRAM Co.*, 373 F.3d

9

241, 244 (2d Cir. 2004); *Travel Wizard v. Clipper Cruise Lines*, No. 06 Civ. 2074 (GEL), 2007 WL 29232, at *2 (S.D.N.Y. Jan. 3, 2007) ("[E]ven where one party altogether fails to respond to a motion to vacate or confirm an award . . . district courts should assess the merits of the record rather than merely entering a default judgment."); *N.Y.C. Dist. Council of Carpenters Pension Fund v. Brookside Contracting Co., Inc.*, No. 07 Civ. 2583 (WHP), 2007 WL 3407065, at *1 (S.D.N.Y. Nov. 14, 2007) (same).[3]

 "Nonetheless, in the context of a petition to confirm an arbitration award, the burden is not an onerous one." *N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel Constr. Group, LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *3 (S.D.N.Y. Feb. 2, 2009). The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138-39 (2d Cir. 2007). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co.*, 462 F.3d at 110 (internal citation omitted). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *Id.* (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). "Only a 'barely colorable justification for the outcome reached' by the

---

 [3] Analogously, "when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true," *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999), and the court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty," *N.Y. State Teamsters Conference Pension & Retirement Fund v. Comac Builders Supply Corp.*, No. 06 Civ. 208 (FJS) (GHL), 2009 WL 890562, at *2 (N.D.N.Y. Mar. 30, 2009) (internal quotation omitted).

arbitrators is necessary to confirm the award." *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).[4]

## 2.   Judicial Review of Labor Arbitration Awards

In particular, "[j]udicial review of a labor-arbitration decision pursuant to [a collective bargaining] agreement is very limited." *Allied Int'l Union v. Tristar Patrol Servs., Inc.*, No. 06 Civ. 15515 (LAP), 2007 WL 2845227, at *2 (S.D.N.Y. Sept. 26, 2007) (quoting *Major League Baseball Players Ass'n. v. Garvey*, 532 U.S. 504, 509 (2001)); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (holding that "arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation" (internal citation omitted)).  When reviewing an award under Section 301 of the LMRA, the Court should uphold an arbitration award as long "as it draws its essence from the collective bargaining agreement." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).  "Even if the Court is convinced that the '[the arbitrator] committed serious error,' the award should not be vacated so long as the arbitrator is 'even arguably construing or applying the contract and acting within the scope of his authority.'" *Supreme Oil Co., Inc. v. Abondolo*, 568 F. Supp. 2d 401, 405-06 (S.D.N.Y. 2008) (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38-39 (1987)).

---

[4] Conversely, where a party seeks to vacate or modify an arbitration award, that party will bear the burden of proof, "'and the showing required of that party . . . to avoid summary affirmance of that award is high.'"  *HRH Constr., LLC v. Local No. 1, Int'l Union of Elevator Constructors*, No. 03 Civ. 8944 (DC), 2005 WL 31948, at *4 (S.D.N.Y. Jan. 5, 2005) (quoting *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 461 (S.D.N.Y. 1997)).

Although the FAA

> does not apply to 'contracts of employment of . . . workers
> engaged in foreign or interstate commerce,' 9 U. S. C. § 1, . . .
> federal courts have often looked to the Act for guidance in labor
> arbitration cases, especially in the wake of the holding that § 301
> of the [LMRA] . . . empowers the federal courts to fashion rules of
> federal common law to govern '[s]uits for violation of contracts
> between an employer and a labor organization' under the federal
> labor laws.

*United Paperworkers*, 484 U.S. at 40 n.9 (internal citation omitted); *see N.Y.C. Dist. Council of Carpenters Pension Fund v. B&A Interiors, Ltd.*, No. 07 Civ. 5620 (RJS), 2009 WL 233969, at *2 (S.D.N.Y. Jan. 23, 2009).  Under the FAA, a Court may vacate an arbitral award only under specific and limited circumstances:

> (1)   where the award was procured by corruption, fraud, or
>        undue means;
>
> (2)   where there was evident partiality or corruption in the
>        arbitrators, or either of them;
>
> (3)   where the arbitrators were guilty of misconduct in refusing
>        to postpone the hearing, upon sufficient cause shown, or in
>        refusing to hear evidence pertinent and material to the
>        controversy; or of any other misbehavior by which the
>        rights of any party have been prejudiced; or
>
> (4)   where the arbitrators exceeded their powers, or so
>        imperfectly executed them that a mutual, final, and definite
>        award upon the subject matter submitted was not made.

9 U.S.C. § 10.  The FAA similarly provides limited circumstances under which an arbitration award may be modified, including where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.  9 U.S.C. § 11(a); *see Brookside Contracting Co.*, 2007 WL 3407065, at *2.  "The miscalculation must be 'clear on the face of the award or . . . clearly inferred therefrom.'"

*Brookside Contracting Co.*, 2007 WL 3407065, at *2 (quoting *Al-Azhari v. Merit Capital*

*Assocs.*, *Inc.*, No. 99 Civ. 9795 (LAK), 2000 WL 151914, at *2 (S.D.N.Y. Feb. 14, 2000)).

### B. <u>Petitioner's Request To Confirm the Arbitrator's Award in This Case</u>

In its Petition and Proposed Findings, Petitioner seeks confirmation of the Arbitrator's

award as issued, in the sum of $1,465,315.34.  (Pet., at 1; Proposed Findings ¶ 24.)

Included in this sum were the following amounts awarded by the Arbitrator pursuant to

the CBA:  unpaid, accrued vacation pay in the amount of $570,036.50 (Pet., Ex. H); unpaid,

accrued holiday pay in the amount of $130,321.82 (*id.* Ex. I); unpaid severance pay for all

members who were laid off prior to the Employer's closure, in the amount of $83,013.89 (*id.*

Ex. J); unpaid severance pay for all members who were laid off upon the Employer's closure, in

the amount of $225,723.11 (*id.* Ex. K); and payments owed to Employees who were laid off

without the requisite 30 days' notice of lay off, in the amount of $322,942.92 (*id.* Ex. L).  (*See*

*id.* Ex. F, at 3.)  The Arbitrator based his decision on the relevant provisions of the CBA (*see*

*supra* at Background, Part A(1)) and spreadsheets containing Respondent's payroll data; those

spreadsheets set out each affected Employee's name, partial social security number, monthly and

daily wages, and other relevant information, depending on the spreadsheet in question, such as

the Employees' date of hire or layoff date, years of service, or accrued holidays.  (*Id.*)

The Arbitrator also awarded Petitioner $105,912.38 for Respondent's failure to pay

certain Employees their August 1, 2012 bonus payments (*id.* Ex. M), pursuant to the MOA, and

$27,364.73 for Respondent's failure to pay certain Employees their April 1, 2013 bonus

payments (*id.* Ex. N), pursuant to the Pension Lump Sum Agreement.  The Arbitrator again

relied on spreadsheets that Petitioner created using Respondent's payroll data, including the

names of the affected Employees, their wages, and the bonus payment they were owed.  (*See id.* Ex. F, at 3; *id.* Exs. M, N.)

These various spreadsheets (*id.* Exs. H-N), along with the submitted copies of the CBA, MOA, and Pension Lump Sum Agreement, provide more than a colorable basis for the Arbitrator's awards of each of the foregoing amounts, totaling $1,465,315.34.  This Court does not discern that the Arbitrator made any miscalculations, and there is no evidence that the Arbitrator's decision was arbitrary, exceeded his authority, was procured by fraud, or was otherwise contrary to law.  Nor has Respondent, who has failed to appear, challenged the Arbitrator's decision in any way.  *See D.H. Blair & Co.*, 462 F.3d at 109 (noting that where a non-movant fails to respond to a motion to confirm an arbitration award, "its failure to contest issues not resolved by the record will weigh against it"); *see also Laundry, Dry Cleaning Workers & Allied Indus. Health Fund v. Jung Sun Laundry Group Corp.*, No. 08-CV-2771 (DLI) (RLM), 2009 WL 704723, at *5 (E.D.N.Y. Mar. 16, 2009) (finding that failure to respond to motion to confirm arbitration award weighed against non-moving party).

Accordingly, I recommend that the Arbitrator's award be confirmed and judgment in Petitioner's favor be entered in the amount of $1,465,315.34.  *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Alliance Workroom Corp.*, No. 13 Civ. 5096 (KPF), 2013 WL 6498165, at *5 (S.D.N.Y. Dec. 11, 2013) ("There being more than 'barely colorable justification' for the arbitrator's award, and no material issue of fact for trial, the Court will uphold the arbitrator's decision and confirm the Award.").

## C.    Pre-Judgment Interest on the Award

Although Petitioner does not raise this issue in its Proposed Findings, it states in its Petition, as well as in its brief in support of its motion to confirm the arbitration award, that it is

seeking post-award, pre-judgment interest on the Nicolau Award.  (*See* Pet., at 9; Pet. Mem., at 1.)  It is in the discretion of the trial court whether to award pre-judgment interest in an action to confirm an arbitration award, but there is a general "presumption in favor of prejudgment interest."  *Waterside Ocean Navigation Co. v. Int'l Navigation, Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984); *N.Y.C. Dist. Council of Carpenters v. Gen-Cap Industries, Inc.*, No. 11 Civ. 8425 (JMF), 2012 WL 2958265, at *3-4 (S.D.N.Y. July 20, 2012).  More specifically, courts in this district have found that "pre-judgment interest is appropriate in an action to confirm an LMRA award when the relevant agreement indicates that the award is 'final and binding.'"  *Gen-Cap Industries*, 2012 WL 2958265, at *3-4.  Although the determination of the interest rate is also within the discretion of the trial court, the "common practice among courts within the Second Circuit is to grant interest at a rate of nine percent per annum – which is the rate of prejudgment interest under New York State law, N.Y. C.P.L.R. §§ 5001-5004 – from the time of the award to the date of the judgment confirming the award."  *Id.*; *see also District Council 1707 v. Ass'n of Black Social Workers Day Care*, No. 09 Civ. 5773 (DLC), 2010 WL 1049617, at *3 (S.D.N.Y. Mar. 22, 2010) (awarding pre-judgment interest at a rate of nine percent from date of arbitration award to date of judgment).

The CBA between the parties to this case states that the "award of an arbitrator hereunder shall be final, conclusive and binding."  (Pet., Ex. A, at 94.)  Given this language in the CBA and the presumption in favor of awarding pre-judgment interest, I recommend granting Petitioner's

request for pre-judgment interest at a rate of nine percent from the date of the Nicolau Award to the date that judgment is entered in this case.[5]

## II . ATTORNEYS' FEES AND COSTS

Petitioner also asks the Court to grant it attorneys' fees in the amount of $13,432.00 and costs in the amount of $495.00.  (*See* Affirmation of Susan J. Cameron, Esq., in Support of Petitioner's Claim for Attorney's Fees, dated Oct. 17, 2013 ("Cameron Fee Aff.") (Dkt. 22).)  As discussed below, Petitioner has, at this time, established entitlement to the costs that it seeks, but not to its requested fees.

### A.   The Court's Inherent Authority To Award Fees and Costs in this Action

 "Ordinarily, attorney's fees cannot be recovered in a federal action in the absence of statutory authority, and neither Section 301 of the LMRA nor the Federal Arbitration Act provides for attorney's fees in actions to confirm an arbitration award."  *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Dejil Systems, Inc.*, No. 12 Civ. 005 (JMF), 2012 WL 3744802, at *4 (S.D.N.Y. Aug. 29, 2012); *see also Int'l Chem. Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985).  Nevertheless, courts may exercise their "inherent equitable powers to award attorneys' fees when opposing counsel acts in bad faith," and, in arbitration award confirmation proceedings, courts have awarded fees "when a challenger refuses to abide by an arbitrator's decision without justification."  *Dejil Systems*, 2012 WL 3744802, at *4; *accord Int'l Chem. Workers*, 774 F.2d at 47.  Indeed, "[c]ourts have routinely awarded attorney's fees in cases where a party merely refuses to abide

---

[5] Although Petitioner requests that interest on the award be computed at the rates specified in 28 U.S.C. § 1961(a) (*see* Pet. Mem., at 1), this provision governs post-judgment interest, not the pre-judgment interest that Petitioner seeks here.

by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." *Abondolo v. H. & M.S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *3 (S.D.N.Y. May 12, 2008) (collecting cases); *see also id.* (awarding attorneys' fees and costs where respondent did not appear or participate in the arbitration or confirmation proceedings).

In this case, it appears that an award of attorneys' fees and costs would be justified under the Court's inherent authority, assuming Petitioner's application for such an award is adequately supported. Notwithstanding Respondent's agreement to submit all disputes to binding arbitration under the CBA (Pet., Ex. A, at Art. XXXII), Respondent neither appeared at the arbitration proceeding nor in the confirmation proceedings in this Court, and Respondent also made no motion challenging the Arbitrator's award. Accordingly, it would be appropriate for the Court to grant Petitioner the reasonable attorneys' fees and costs it expended in bringing this action. *See Angel Constr. Grp.*, 2009 WL 256009, at *3 ("Here, Defendant has failed to appear or in any way defend this confirmation action, and thus it is axiomatic that Defendant has offered no justification for its failure to abide by the Award."); *In Matter of Arbitration between Soft Drink and Brewery Workers Union Local 812*, No. 95 Civ. 8081 (SAS), 1996 WL 420209, at *3 (S.D.N.Y. July 25, 1996) (finding award of attorneys' fees and costs appropriate where respondent neither paid arbitral award nor filed motion to vacate or modify the award).

**B.**     **Petitioner's Requested Attorneys' Fees**

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are reasonable is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (lodestar calculation creates "presumptively reasonable fee" (internal quotation marks omitted) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d

17

182, 183 (2d Cir. 2008); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010))). There

is a "strong presumption" that the lodestar represents the appropriate award, although

"enhancements may be awarded in rare and exceptional circumstances." *Perdue*, 130 S.Ct. at

1673.

The party seeking fees bears the burden of demonstrating that its requested fees are

reasonable. *See Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984);

*Robinson v. City of N.Y.*, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29,

2009). To that end, the fee application must be supported by contemporaneous time records that

"specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y.

State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The reasonable

hourly rate is what "a reasonable, paying client would be willing to pay," *Arbor Hill*, 522 F.3d at

184 (2d Cir. 2008), and varies by location and practice area, *id.* at 192.

### 1.   Reasonable Hourly Rates

In this case, Petitioner was represented by the law firm Levy Ratner, P.C., a firm that

represents unions and individual employees in labor litigations and arbitrations. (*See* Cameron

Fee Aff. ¶ 3.) Petitioner seeks fees for the work of three Levy Ratner attorneys and two

paralegals. (*See generally id.*) In particular, Petitioner seeks compensation for work performed

by attorney Suzanne Hepner, Esq. ("Hepner"), at a rate of $275 per hour; by attorney Susan J.

Cameron, Esq. ("Cameron"), at a rate of $195 per hour; by attorney Jorge A. Cisneros, Esq.

("Cisneros"), at a rate of $195 per hour; and by the two paralegals at a rate of $100.00 per hour

for each.[6] (*Id.* ¶ 6.)

---

[6] Although, in her affirmation in support of Petitioner's claim for attorneys' fees,
Cameron states that the rate for paralegal service is $65 per hour (Cameron Fee Aff. ¶ 6), the

Hepner apparently received her J.D. from the University of Connecticut School of Law in 2000, and is currently a partner at Levy Ratner.[7]  Cameron received a J.D. from Brooklyn Law School in 2006 and became a member of the Bar of the State of New York in 2007, an associate at Levy Ratner in September 2006, and a partner in the firm in July 2013.  (Cameron Fee Aff. ¶ 7.)  Cameron states that she has extensive practice in the fields of labor and employment law, has served as co-counsel or sole counsel to labor unions and employees, and has worked, for at least six years, on actions similar to this one, to confirm arbitration awards.  (*Id.* ¶ 4.)  Cisneros received a J.D. from New York University School of Law in 2011, became an associate at Levy Ratner in August 2011, and became a member of the Bar of the State of New York in 2012.  (*Id.* ¶ 8.)

Regardless of whether the requested hourly rates for these attorneys would be within a reasonable range for the relevant market and nature of this case,[8] the Court notes that Petitioner has made inconsistent statements to the Court regarding the rates that it considers appropriate for these attorneys' time.  Specifically, in a labor-law case related to this action and filed at the same time, *1199SEIU United Healthcare Workers East v. S. Bronx Mental Health Council, Inc.*, No. 13 Civ. 2768 (the "WARN Act Case"), Petitioner submitted a fee application for work

---

records attached to that affirmation list the rate for paralegals as $100 per hour (*id.* Ex. 1). Moreover, the total amount that Petitioner requests in its application is plainly based on an hourly rate of $100 for paralegal time (*compare id.* ¶¶ 13, 15-16 *with id.* Ex. 1), so the Court assumes that Cameron erred by stating the $65-per-hour rate in her affirmation.

[7] *See* http://www.levyratner.com/attorney.cfm?ID=71 (last visited Feb. 4, 2014).

[8] *See, e.g.*, *Trs. of the E. States Health and Welfare Fund v. Crystal Art Corp.*, No. 00 Civ. 0887 (NRB), 2004 WL 1118245, at *6 (S.D.N.Y. May 19, 2004) (finding rates of $275 per hour for a partner and $200 per hour for senior associates reasonable in ERISA case); *Alliance Workroom Corp.*, 2013 WL 6498165, at *7 (finding rate of $90 per hour for paralegals reasonable).

performed by the same three attorneys and one of the same paralegals, for substantially the same time period, but requesting an award based on lower hourly rates (*see id.* at Dkt. 16 (Amended Affirmation of Susan J. Cameron, Esq., in Support of Plaintiff's Claim for Attorneys' Fees and Costs, dated Aug. 29, 2013)).  In that case, Magistrate Judge James C. Francis IV recommended that the Court accept, as reasonable, requested hourly rates of $185 for Cameron, $185 for Hepner, $185-190 for Cisneros, and $85-90 for the paralegals (*id.* at Dkt. 24), a recommendation that was then adopted by the Court (*id.* at Dkt. 25).

While there may be a valid reason why Petitioner requested lower rates, overall, for counsel's work in the WARN Act Case, Petitioner has not explained this to the Court.  Nor is it clear to this Court why, in the WARN Act Case, Petitioner sought to recover fees for the work of Hepner (a partner, and the most senior attorney on the case) at an hourly rate that was the same – or, at times, even lower – than the rate sought for Cisneros (the most junior associate on the matter), but Petitioner has now, in this case, significantly adjusted the rate sought for Hepner.

The Court should not be made to guess at the reasons for the discrepancies in the billing rates assigned to counsel in these two cases, and it need not, at this time.  For the reasons set forth below, I am recommending that Petitioner's attorneys' fee application be denied at this point, in any event, without prejudice to renew.  Under the circumstances, I further recommend that, should Petitioner renew its application to remedy the deficiencies discussed below, it also be directed to provide an explanation to the Court as to why it has submitted different hourly rates for the same attorneys, for their work on two related cases.

## 2.   <u>Reasonable Number of Hours</u>

In support of its fee application in this case, Petitioner has submitted contemporaneous time records reflecting not only the identities of the attorneys and paralegals who purportedly

worked on the case and their hourly rates, but also the tasks performed, the dates of that work, and the number of hours spent on each task.  (*See* Cameron Fee Aff., Ex. 1 (Time and expense records, dated Mar. 21, 2013 to Oct. 15, 2013 ("Account Statement")).)  Overall, Petitioner seeks attorneys' fees in the amount of $13,432.00, representing 63.4 hours of attorney time[9] and 12.7 hours of paralegal time.  Having reviewed the time records in the Account Statement, this Court concludes that, for several reasons, this is an unreasonable number of hours and that Petitioner's submission does not permit the Court to ascertain the number of hours that would, in fact, be reasonable.

First, it appears that numerous entries in the Account Statement pertain to work that was performed by Levy Ratner *not* for the present case, but rather for the WARN Act Case, or for Petitioner's other legal matters.  The Court notes, for example, that Petitioner filed inquest papers in the WARN Act Case on August 29 and August 30, 2013 and attended an inquest hearing before Magistrate Judge Francis on September 27, 2013 (*see* No. 13 Civ. 2768, at Dkts. 1, 16-18, 24), which would coincide with certain time entries contained in Petitioner's fee application in this case.  (*See* Cameron Fee Aff., Ex. 1, at 2 (entries dated 7/24/13 ("Office conference with J. Cisneros re: WARN Act"), 8/27-30/13 (describing work done on

---

[9] In her affirmation, Cameron represents that the attorneys billed 60.4 hours and the paralegals billed 12.7 hours working on this matter, and seeks a total award for attorneys' fees of $13,432.00.  (Cameron Fee Aff. ¶¶ 10, 13.)  The Account Statement attached to her affirmation, however, reflects a total of 63.4 hours of attorney time on this case (45.9 hours of work by Cameron, 9.7 hours of work by Cisneros, and 4.8 hours of work by Hepner).  (*Id.*)  Given that Cameron repeatedly states in her affirmation that Petitioner is seeking a total award of $13,927.00, which includes $13,432.00 in fees and $495.00 in costs and disbursements, and that these are the total amounts reflected in the Account Statement, the Court will assume that Petitioner is seeking fees for the full 63.4 hours of attorney time and that paragraph 10 of the Cameron Fee Affirmation contains a typographical error.

inquest/default judgment papers), and 9/26-27/13 (describing work done in preparation for court conference re: inquest).)  There are also time entries that appear to relate to work that Levy Ratner performed for Petitioner on one or more other cases, seemingly unrelated to either instant action or the WARN Act Case.  (*See, e.g.*, *id.* Ex. 1, at 1-2 (entries dated 5/14/13 ("Conference call with Co-Counsel . . ."), 7/29/13 ("Office conference . . . re: lawsuit against Board of Directors"), 8/8/2013 ("Attend Court conference . . . communication with Union re: 2d Department's decision . . ."), 9/17/13 (describing email communications regarding members' claims).)[10]

     Second, certain time entries in the Account Statement are too vague to enable the Court to ascertain their reasonableness.  For example, some time entries reflect emails or phone calls, without describing the substance of the communications, even in general terms.  (*See, e.g.*, Cameron Fee Aff., Ex. 1, at 1 (entries dated 5/3/13 ("Telephone call with N. Shillingford, V. Phillips and A. Palaez; review documents for same."); 7/28/13 ("Office conference with J. Cisneros re: South Bronx Mental Health Council.").)  As a general matter, the Court should not award fees based on such vague time entries.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, No. 10 Civ. 5256 (KMW) (DF), 2012 WL 5816878, at *10 (S.D.N.Y. Nov. 14, 2012) (holding overly-vague time records insufficient to substantiate claimed expenditures of time (collecting cases)).  Further, the vagueness of these time entries is of particular concern here, where, as

---

[10] The Account Statement also includes two time entries for work performed by Levy Ratner prior to the arbitration.  (*See* Cameron Fee Aff., Ex. 1.)  Given that any fee award here would be made in the exercise of the Court's equitable powers, and would only be justified by Respondent's failure to comply with the Arbitration Award (*see supra* Part III(A)), it would be inappropriate for the Court to award Petitioner attorneys' fees for time spent preparing for the arbitration itself.

discussed above, the records suggest a likelihood that some of the billed time related to matters other than the one before this Court.

As a result of the patently over-inclusive nature of the time records submitted by Petitioner to the Court, as well as the vagueness of several time entries contained in those records, the Court simply cannot determine how much time counsel reasonably spent working on this action.  Accordingly, the Court recommends that Petitioner's application for attorneys' fees be denied, without prejudice to renew its fee application with a submission that remedies these deficiencies.

### C.       **Petitioner's Requested Costs**

Finally, Petitioner seeks $495.00 for costs spent litigating this case.  These costs are itemized in the Account Statement and include the $350.00 fee for filing the Petition in this Court and a $145.00 fee for the retention of Premier Legal Services, Inc. ("Premier Legal"), a process server.  The Docket reflects the $350.00 filing fee as well as an affidavit of service from a Premier Legal process server.  (*See* Dkts. 1, 4.)

As the filing fee was necessarily incurred and the process-server fee appears reasonable, I recommend that Petitioner be awarded costs in the requested amount of $495.00.  *See* Fed. R. Civ. P. 54(d)(1); 28 U.S.C. § 1920; *U.S. ex rel. Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 172 (2d Cir. 1996) (holding that, although not listed as taxable cost under 28 U.S.C. § 1920, reasonable process server fee is recoverable in connection with award of attorneys' fees).

## <u>CONCLUSION</u>

For all of the foregoing reasons, I recommend that Petitioner's motion to confirm the arbitration award (Dkt. 9), for pre-judgment interest, and for litigation fees and costs, be granted

in part and denied in part, and that judgment be entered in Petitioner's favor in the following

amounts:

> 1.  $1,465,315.34 for the Nicolau Award;
>
> 2.  Pre-judgment interest on the above amount, to be calculated at the rate of nine percent, from April 6, 2013 to the date of the judgment; and
>
> 3.  $495.00 in litigation costs.

I further recommend that Petitioner's application for attorneys' fees be denied, without

prejudice to renew, and that any renewed application (a) explain the discrepancies in the billing

rates requested in Petitioner's WARN Act Case and this one, and (b) demonstrate, with

reasonable clarity, that the attorney time for which compensation is sought was time actually

spent on this case.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be

filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

John G. Koeltl, United States Courthouse, 500 Pearl Street, Room 1030, New York, New York

10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street,

Room 1660, New York, New York, 10007.  Any requests for an extension of time for filing

objections must be directed to Judge Koeltl.  FAILURE TO FILE OBJECTIONS WITHIN

FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-

CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        February 14, 2014

                                          Respectfully submitted,


                                          DEBRA FREEMAN
                                          United States Magistrate Judge


Copies to:

Hon. John G. Koeltl, U.S.D.J.

Petitioner's counsel (via ECF)

John Langrod, Ph.D.
Chair, Board of Directors
South Bronx Mental Health Council, Inc.
2109 Broadway, #506
New York, NY 10023